Good morning, Your Honors. My name is David Uramian and I'm appearing here on behalf of Appellant Mr. Guan. Mr. Guan appeals the immigration judge's adverse credibility determination and the denial of all forms of relief that flowed therefrom, largely because it was based on impermissible speculation and was not supported by substantial evidence in the record. The second item that Mr. Guan is appealing is the analysis of the – well, the denial of the relief under the Convention Against Torture. And the basis for that appeal is primarily that the immigration judge did not meet the standard required under the presidential authority for conducting his analysis before ruling in – against Mr. Guan. And I will get to that during my argument. But first I'd like to address the adverse credibility determination. The immigration judge espoused five different reasons for basically disbelieving Mr. Guan's testimony. Let me just focus in on at least one or two of them just to get your input on it, assuming that some of the reasons were speculative or based upon the IJ's own assumptions about how people behave in China and here, for that matter. Why isn't an adverse credibility determination supportable in this case where you have someone who's come here on a business visa, says nothing to anybody, but in particular says nothing when he goes to get that visa extended by an immigration consultant and applies for a renewal of his Chinese passport all before applying for asylum after more than five-year delay? Well, Your Honors, that's a good question. And the answer is that Mr. Guan specifically testified in the record that he had a conversation with his father in China after September 11, 2001, wherein he learned there was a crackdown on the members of his church and on other dissident groups. And he specifically testified that his father told him that the police had – or the governmental authorities had come to his home on two different occasions asking for his whereabouts and that two of his church members had been detained and were not heard from after that detention. So specifically, I think that Mr. Guan had a greater fear of persecution after September 11, after which the Chinese government started cracking down on these dissidents and underground churches. But after that, he got his Chinese passport renewed, which was in 2002. Well, he also testified – He just doesn't – you know, some of you – you may be absolutely right. I'm just doing this for the sake of getting your input. But, I mean, it makes no sense that you would do that if you had a genuine fear of going back. You would have applied for asylum then and not renewed your Chinese passport, wouldn't you? Well, Your Honor, I don't want to engage in impermissible speculation as well as to what was going on. Well, we're entitled to use our common sense. Right. And I believe that Mr. Guan also testified in the record that the way he obtained the passport was by, you know, paying an individual that he knew to obtain the passport for him. Which the I.J. is entitled to disbelieve. The I.J. is entitled to disbelieve that. But at the same time, there is presidential authority that says whether you have a passport and how you obtain the passport does not discount your subjective fear of persecution. I have a – I'm sorry. Go ahead. I have a question concerning the scope of the relief that you are requesting. Assume for the sake of this question that we agree with you that there is not substantial evidence under our cases to support the adverse credibility finding. We have a recent case called Soto Olarte, which says that we have different options if we grant a petition in this circumstance. And sometimes we say that the person has to be believed and sometimes we just send it back for more work. What specifically are you asking for here and why? Well, Your Honors, I mean, the best-case scenario for Mr. Guan would be a reversal of the adverse credibility determination, which essentially leaves only his testimony in the record. The government did not put forth any evidence to – to rebut any of the testimony that he had put forth. And so in the best-case scenario, Your Honors, would grant his – his request for relief either under the withholding of removal standard or the Convention Against Torture. In a worst-case scenario for him, it would be a remand to the BIA for further proceedings. Well, as I recall – I hope I'm not getting this case mixed up with another one – but in this case, the Convention Against Torture claim was not allowed primarily because of the adverse credibility finding. And I don't think they ever looked at, assuming it was credible, whether it's sufficient evidence to demonstrate what has to be shown. So wouldn't we, at a minimum, have to remand that? Well, that leads well into the second part of my argument, which is specifically that under a commorphous, the immigration judge did not engage in the detailed independent analysis that's required and consider outside of the adverse credibility determination if there's any other evidence that would warrant relief under the Convention Against Torture. But we can't do that in the first instance, can we, anyway? Well, you can, Your Honors. There is in the record the country report that has some evidence in it of the torture, the detentions, the persecution that the – that church members similar to Mr. Kwan suffered at the hands of the Chinese government. But if the agency hasn't taken a look at that and made a decision on that ground, isn't that a Ventura and Thomas problem that the agency has to do that first? Your Honors, if that would be the case, then I think that the proper relief would be to remand it to the BIA for further proceedings in that regard. Unfortunately, I'm not familiar with that case law. I'm happy to provide a supplemental brief if that would help clarify for the Court what the proper procedure would be. I'll reserve the remainder of my time for rebuttal unless there's another question. Okay. Thank you, Your Honors. Mr. Fiorino. Good morning. May it please the Court. I'm Paul Fiorino. I'm here to respond. Judge Graber, to pick up on your question, because the immigration judge never addressed the merits of either the asylum claim or the CAT claim, the proper course for the Court would be to remand for them to address the merits in the first instance. I thought your argument was that the asylum claim was waived and that only the withholding and CAT claims were here. Correct. If I said asylum, I meant to. You did. Yes. It's withholding and CAT. Okay. Got it. Thank you. We believe that the record taken as a whole supports the I.J.'s adverse credibility finding. The problem is that almost all of the reasons that the I.J. gave are just based upon the I.J.'s assumptions about how people should behave and did not take into account the circumstance that conditions in China may well have changed in such a way as affected his fear of returning, even if we assume that he didn't have a genuine fear when he came over here. I would disagree with that assessment, Your Honor. The immigration judge gave the six reasons and he made permissible inferences based on that and his reasoning with respect to the implausible aspects of testimony are supported by the record. The record states, as the State Department notes in its reports, that dissidents and religious adherents who are targeted by the Chinese government have problems renewing their passports and have problems getting exit documents. And here the petitioner renewed his Chinese passport before applying for asylum. So not only is that inconsistent with his stated fear of persecution, but it's also inconsistent with the substantial evidence in the record. Namely, it's taken out of the report. Well, counsel, it seems to me that in many, if not most cases, depending on the timing, applicants for asylum will have valid passports or other documents from their country of origin. And depending on the legal requirements, that may be something they have to have. I don't really understand how the mere fact that he's renewing his legal document shows that he's not afraid. I don't even understand that connection. It shows that he's not targeted by the Chinese government. It's relevant for assessing his credibility. He's saying the Chinese government is targeting me because I'm a Christian. I have to report every two weeks. The State Department says if that's the case, such individuals have difficulty renewing their passports. Yet he was able to get his passport and have it renewed. That reason, in conjunction with everything else that the immigration judge cited, supports an inference that his testimony, his evidence is implausible and it's inconsistent, and it supports the immigration judge's adverse credibility finding. So when you look at that in terms of assessing whether his testimony is implausible and the record supports that. So if I understand your argument, it isn't the fact that just getting a passport shows you're not afraid. It's that it might, in this instance, show that he wasn't actually being targeted. Yes. That's more what you're saying. Yes. The bases that the immigration judge gave fall into two categories, inconsistent evidence and implausible evidence. The inconsistent evidence are some of the factors that Judge Reimer discussed with the petitioner that the petitioner did things that are inconsistent with his stated fear. He says that he came here in August of 1997 fleeing persecution. And his conduct subsequent to that over the next five years contradicts that fear. Well, don't you think, counsel, if he shows up in the council, United States Council in Shanghai, and says, I'd like a B-1 visa to visit on business purposes, but I'm really going to apply for asylum, wouldn't the consular official probably not give him a visa? That's true. But look at everything else that the IJ cited. He went to a private lawyer or immigration consultant in the United States and renewed his visa again. He waited for so long. And I don't understand why that's a problem, because if you have two ways to stay in the United States, and one is easy and one is hard, why wouldn't a consultant properly say, well, asylum is harder to get, why don't you just, you know, get your business visa, because that's obviously easier to get. I mean, I don't understand what it proves, what the inference is to draw from it. Well, it's possible that that is what happened. The record doesn't support that. Well, it doesn't. But if, you know, there's speculation on the one side, I'm speculating on the other, and they seem equally plausible to me. Like I say, you put it all together, consider all of the reasons cited by the IJ, and for finding it inconsistent and implausible. And ask the court has to ask itself whether the record compels the conclusion that he's telling the truth. Does the record compel the conclusion of prior fact or the reviewing court that he is credible? And we would submit that it does not. It's possible for each of these reasons to advance an alternate explanation. It's possible to find fault with some of the aspects of the IJ's reasoning. But the question is, taken as a whole, does the record compel the conclusion that he is credible? And we would submit that it does not. Okay. If that hits your questions, then we'll conclude our presentation. Thank you. I think that's it. Mr. Hermanian. Very briefly, Your Honors. I just wanted to point out that there is actually nothing inconsistent with what Mr. Guan was testifying to. He didn't contradict his written statement. He didn't contradict himself on the stand. The only thing that was inconsistent was with regard to what the immigration judge thought he should have testified to. Here's a man who was interrogated for five days and beaten with straps because he was a Christian. And he arrives in the United States and doesn't raise that issue at all when he's got a ground of persecution by the government. And I think beating with straps is sufficient persecution. And that is a presumption that he will face that same situation when he goes back. And he doesn't say a word and doesn't apply for asylum for five years. Is that not circumstantial evidence sufficient to allow the trier of fact to doubt his testimony? I don't think so, Your Honor, because he further testified, as I previously stated, that it wasn't until after 9-11 when his fear was fully realized after he spoke with his father. Is it your position that the Communist Chinese government has only started persecuting Christians after 9-11? No, Your Honor. The applicant testified that when he landed in the United States, he felt free. Presumably, that means that he didn't feel the pressure that he felt that he was under when he was in China. I mean, he was out of the clutches of his persecutor for the first time. And so it's not implausible to believe that someone who doesn't speak the language, who doesn't, you know, is not an attorney, doesn't understand the complexities of international asylum laws, is just going to go about living his life until, as one of Your Honors pointed out, he'd take the easiest route possible until the day of reckoning comes when he's got to make a decision. And that's when he files his application and submitted nothing but consistent testimony on the record. Thank you, Your Honor. Thank you. The matter at this argument will be submitted.
judges: Rymer, Graber, Bea